**Shirley FELTS, Plaintiff,**

v.

**RADIO DISTRIBUTING COMPANY, INC., Defendant.**

**No. S 83–321.**

United States District Court,
N.D. Indiana,
South Bend Division.

Jan. 14, 1985.

See also 637 F.Supp. 234.

Aladean M. DeRose, South Bend, Ind., for plaintiff.

Anthony V. Luber, Jeffery A. Johnson, South Bend, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case was filed on July 19, 1983 under Title VII of the Civil Rights Act of 1964, specifically 42 U.S.C. § 2000e–2(a), and tried before this court in South Bend, Indiana on December 17 and 18, 1984. Final oral argument and supplemental briefs have been filed. Plaintiff alleges discrimination based on pregnancy and sex as an individual. This memorandum is intended to comply with Rule 52, F.R.Civ.P. An effort has been made to comply with the Seventh Circuit Judicial Council Resolution dated October 4, 1984.

In August, 1979, Shirley Felts was hired by Radio Distributing Company as an expediter in its Industrial Sales Department

where she received regular hourly pay increases and the right to a monthly bonus three months earlier than the twelve month norm. In early 1981 she was promoted to the position of industrial sales person, a job position involving greater status, responsibility, and income potential than expediter (testimony of Matt Stevens). She was the first female sales person in Radio Distributing's (R.D.) history. Shortly after her promotion, Shirley Felts received a pay increase to $4.70 per hour, but was the lowest paid sales person in the department (testimony of Matt Stevens).

Throughout her tenure as industrial sales person, Shirley Felts was considered by her fellow workers to be a good employee, who did her job well, and who quickly learned the procedures (testimony of Robert Horvath); she was complimented on at least five occasions by customers which was reported to her supervisor, Matt Stevens (testimony of Twila Stone). Although she did not have responsibility for any specific large account unlike the other salesmen (testimony of Twila Stone, Robert Horvath, and Shirley Felts), she had sales from April 1981 to March 23, 1982 in excess of R.D.'s most highly regarded sales person, Robert Horvath, (plaintiff's Exhibit 10), and was complimented periodically on her productivity (testimony of Shirley Felts).

In January 1982, Shirley Felts learned she was pregnant and notified her supervisor, Matt Stevens. Shortly after this notice, Shirley Felts overheard Stevens say on the phone to someone inhouse: "No, we don't have to take her back, especially if she's not married."

R.D.'s past practice in medical disability cases was to permit the employee man or woman, to return to the same position following medical leave (plaintiff's Exhibit 20).

On March 23, 1982, Shirley Felts commenced a medical leave for pregnancy, giving R.D. proper notice according to the procedures of the personnel manual (plaintiff's Exhibits 3 through 3(b); defendant's Exhibit K Section 3100). At the time of Shirley Felts' leave, her job was given on a temporary, fill-in basis to Mary Szymanski, then an expediter in the same position occupied by Shirley Felts before her promotion (testimony of Matt Stevens).

On Tuesday, July 6, 1982, Shirley Felts notified her supervisor, Matt Stevens, that she had been released to return to work on July 12, 1982. Matt Stevens then told her that the company was having financial problems, that there was not enough work to justify her return to work, and that she should file for unemployment compensation (testimony of Shirley Felts). Shirley Felts inquired at the Unemployment Office and called Matt Stevens back to advise that she alone could not be laid off, whereupon Mr. Stevens said that others had been laid off (testimony of Shirley Felts). All other persons laid off from the South Bend facility with the exception of a part-time laborer were laid off on or after July 6, 1982 (defendant's answer to Interrogatory No. 1), and none was recalled (defendant's answer to Interrogatory No. 2), except one Tammy Arbuckle. Shirley Felts called the company back later and was told by Mr. Robert Yates to "relax and enjoy [her] baby" (testimony of Shirley Felts).

The Industrial Sales Department had through the entire course of Shirley Felts' employ consisted of two expediters and four sales persons except for the brief tenure of Mike Bronsing, who performed mostly expediting duties (testimony of Shirley Felts and Twila Stone), and who was fired in April 1982 for incompetence (testimony of Matt Stevens), Mr. Stevens having directed the receptionist not to give any sales calls to him (testimony of Twila Stone). While Shirley Felts was on maternity leave, there continued to be two expediters, Terry Toppel and Sue Wooten, who had been moved from another department into expediting (testimony of Twila Stone); however, the number of sales persons had increased by one with the addition of John Fader, formerly an over-the-counter salesman of retail TV parts, a separate department from industrial sales, whose sales work was being phased-out by R.D. (testi-

mony of Robert Horvath). At the time Shirley Felts called to return to work on July 6, 1982, the Industrial Sales Department consisted of five salespersons, Matt Stevens, Robert Horvath, Jim McPhail, John Fader, and Mary Szymanski performing Shirley Felts' job, and two expediters, Terry Toppel and Sue Wooten. No sales position or expediting position was eliminated, nor was any other person in the Industrial Sales Department placed on layoff.

At some time in mid-August 1982, Matt Stevens called Shirley Felts to offer her the job of expediter which had become vacant upon the resignation of Sue Wooten (testimony of Shirley Felts). The hourly rate was $4.50 or $.20 less than Shirley Felts' previous hourly rate and the bonus Felts had previously received as expediter was eliminated (testimony of Shirley Felts and Matt Stevens). The offered position was also a demotion in terms of job responsibility and status. On August 20, 1982, Shirley Felts declined this offer of employment.

## II.

■ The Pregnancy Discrimination Act, effective October 31, 1978, amended the definition section of Title VII, 42 U.S.C. § 2000e by adding a new subsection (k) as follows:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in Section 2000(e)–2(h) of this title shall be interpreted to permit otherwise....

As a result of this enactment, discrimination based on pregnancy is per se discrimination based on sex, *Newport News Ship Building & Dry Dock Co. v. EEOC*, 462

U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983).

After passage of the Pregnancy Discrimination Act (Act), the EEOC issued interpretive guidelines in the form of questions and answers: question number 9 is applicable in this case, which question and answer are as follows:

> 9. Q. Must an employer hold open the job of an employee who is absent on leave because she is temporarily disabled by pregnancy-related conditions:
> A. Unless the employee on leave has informed the employer that she does not intend to return to work, her job must be held open for her return on the same basis as jobs are held open for employees on sick or disability leave for other reasons. 28 C.F.R. 1604 Appendix (1982).

Moreover, prior to the passage of the Pregnancy Discrimination Act, the Supreme Court of the United States mandated the same result in the case of *Nashville Gas Co. v. Satty*, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977) holding that it was discriminatory to deny pregnant women their seniority upon return from pregnancy leave when men are not subjected to the same burden on return from disability leave. Significantly, on the issue of maternity leave, the Supreme Court's opinion in *Satty* was prescient of the Act:

> Petitioner has not merely refused to extend to women a benefit that men cannot and do not receive, but has imposed on women a substantial burden that men need not suffer. The distinction between benefits and burdens is more than one of semantics. We held in [*General Electric Co. v.*] *Gilbert* [, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343] that Section 703(a)(1) did not require that greater economic benefits be paid to one sex or the other "because of their differing role in 'the scheme of human existence'", .... but that holding does not allow us to read Section 703(a)(2) to permit an employer to burden female employees in such a way as to deprive them of employment opportunities because of their dif-

ferent role. *Nashville Gas Co. v. Satty,* 434 U.S. at 142, 98 S.Ct. at 351.

Although plaintiff's prima facie case as required by *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) does not fall neatly into the *McDonnell Douglas* construction, that model is "not inflexible" and facts will vary in Title VII cases. *McDonnell Douglas v. Green, supra, Furnco Const. Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). A prima facie case is one from which it can be inferred that if an employer's action remain unexplained, it is more likely than not based upon illegal discriminatory criterion. *Furnco v. Waters, supra,* 438 U.S. at 576, 98 S.Ct. at 2949. Plaintiff has established her prima facie case by showing that she is a member of a protected class, that her work was satisfactory, that she took a maternity leave of absence with intent to return to work, that her job was not held open for her contrary to the defendant's past practice in medical disability cases.

■ Viewing this case first as one of discriminatory treatment, plaintiff's prima facie case may be rebutted by defendant's articulation of a legitimate, non-discriminatory reason for termination, which plaintiff, who has the overall burden of persuasion, may rebut directly by showing that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's stated reason is not worthy of credence. *Texas Depart. of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

The only reason given by R.D. for not returning Shirley Felts to her former position is that the financial condition of the company was poor and would not permit an additional employee. Yet, the Sales Department had actually gained one additional salesperson during the time of Shirley Felts' leave. No one in the department was laid off; no position was eliminated. Moreover, the company had funds enough to build costly executive offices at a time when it knew it was undergoing losses, and sales personnel costs were increased by a modification of the bonus incentive plan at the time Shirley Felts was dropped from the sales force. That no sales position was eliminated and that a position was added to accommodate a male employee reveals that there was no lack of work or funds to support the Sales Department. Rather, it becomes clear that Shirley Felts' job was not held open for her following sick leave in a unique digression from the company's past practice in disability cases and that the employer's stated reason was pretextual.

■ To satisfy the intent element of Title VII, it is not necessary that plaintiff prove the employer had an animus for pregnant women and that the pretext of economic conditions was erected to mask bias or dislike for pregnant women. The Pregnancy Discrimination Act makes clear that women are discriminated against when their pregnant conditions forms the basis of an adverse employment decision. Defendant conceded that had Shirley Felts not earlier taken maternity leave, there would have been no reason to remove her in July 1982. She was, therefore, discriminated against on the basis of pregnancy, hence sex.

### III.

■ The difference between what the claimant would have earned absent the discrimination and what the claimant actually earned during the back pay award period measures a Title VII claimant's damages. *Ford Motor Co. v. E.E.O.C.,* 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982); *Merriweather v. Hercules, Inc.,* 631 F.2d 1161, 1168 (5th Cir.1980); *Kamberos v. GTE Automatic Elect, Inc.,* 603 F.2d 598, 602–03 (7th Cir.1979), *cert. denied,* 454 U.S. 1060, 102 S.Ct. 612, 70 L.Ed.2d 599 (1981); *Taylor v. Philips Industries, Inc.,* 593 F.2d 783, 786–87 (7th Cir.1979). At trial, Shirley Felts introduced evidence as to: the earnings of Mary Szymanski from Radio Distributing during the period for which Felts seeks back pay; and Felts' actual earnings during the period for which she seeks back pay.

The court reduces the amount of any back pay award to Felts by the seven weeks, which is the amount of time she took off for her second pregnancy period. Felts testified at trial that she gave birth to her second child between 1982 and the time she testified at trial. In *Sprogis v. United Air Lines, Inc.*, 517 F.2d 387 (7th Cir.1975), an airline stewardess who lost her job because she violated her employer's no-marriage rule brought a Title VII action against her employer. Between the time of her discharge and the time of trial, however, the plaintiff gave birth to a child. In that case, the Seventh Circuit agreed with the district court that the amount the plaintiff would have earned absent defendant's discrimination did not include earnings for the period she would miss work as a result of the pregnancy. Similarly, the amount Felts would have earned from R.D. absent the discrimination would not have included earnings for the seven-week period in which she would have been on leave for her second pregnancy.

The court in its discretion may reduce any Title VII back pay award to Shirley Felts for unemployment compensation she received during the award period. *Czarnowski v. Desoto, Inc.*, 518 F.Supp. 1252, 1259–60 (N.D.Ill.1981); *Cf. Orzel v. City of Wauwatosa Fire Dept.*, 697 F.2d 743, 756 (7th Cir.1983), *cert. denied*, 464 U.S. 992, 104 S.Ct. 484, 78 L.Ed.2d 680; *Bowe v. Colgate Palmolive Co.*, 416 F.2d 711, 721 (7th Cir.1969). In this case such discretion should be and hereby is exercised. Likewise this court declines to require reinstatement of this plaintiff.

In *Taylor v. Philips Indust., Inc.*, 593 F.2d 783 (7th Cir.1979). The plaintiff failed to establish the actual damages suffered as a result of discrimination, and the Seventh Circuit remanded to the district court for the express purpose of further evidence to determine the actual damages. The record here mandates a further evidentiary hearing so the court can fulfill its duty to make a damage award on a specific basis. Such a hearing will be held as soon as possible.

Also, the question of counsel fees remains reserved.

Counsel are now encouraged to meet and attempt to reach an agreement as to any back pay award in this case.