**Miranda BYRD, Plaintiff–Appellant,**

v.

**LAKESHORE HOSPITAL,**
**Defendant–Appellee.**

**No. 93–6242.**

United States Court of Appeals,
Eleventh Circuit.

Sept. 1, 1994.

Richard J. Ebbinghouse, Robert L. Wiggins, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, for appellant.

David P. Whiteside, Jr., William K. Hancock, Johnston, Barton, Proctor, Swedlaw & Naff, Birmingham, AL, for appellee.

Before KRAVITCH, Circuit Judge, FAY and HENDERSON, Senior Circuit Judges.

KRAVITCH, Circuit Judge:

Appellant Miranda Byrd challenges her termination from employment with Lakeshore Hospital, alleging that she was impermissibly discharged because of her pregnancy in violation of the Pregnancy Discrimination Act (PDA), 42 U.S.C. § 2000e(k). It is undisputed for the purposes of this appeal that Byrd's pregnancy-induced absences, although within the limits of Lakeshore's sick leave policy, were a substantial motivating factor in Lakeshore's decision to terminate her. This appeal centers on whether, in addition to submitting Lakeshore's sick leave policy, Byrd was required to demonstrate that non-pregnant workers with similar records of medically-based absences were treated more favorably than she was. The district court held that this was an unfulfilled prerequisite to Byrd's recovery under the PDA, and denied relief. For the reasons set forth below, we REVERSE and REMAND.

## I.

Byrd was hired as a receptionist/secretary in 1988 by appellee Lakeshore Hospital, a private institution. She received four job evaluations over two years: the first two indicated that she was performing well; the third, in March or April 1990, rated her below the acceptable standards; and the fourth, three months later, again measured her at acceptable levels. Beginning sometime in mid–1990, Byrd's job duties were expanded. Some of her co-workers, including her immediate supervisor Rebecca Bradley, were dissatisfied with her ability to satisfy all of the new demands imposed.

In October 1990, Byrd learned that she was pregnant and within a few days she notified Bradley of the pregnancy. Over the next two months—against a backdrop of Bradley's rising dissatisfaction with her work—Byrd missed approximately ten scattered days of work due to pregnancy-related illness and near-miscarriages. The first such instance occurred in October when, after a near-miscarriage and pursuant to her doctor's orders, Byrd required bedrest for approximately one week. After a second near-miscarriage, Byrd missed another three or four days of work. By December, Bradley had expressed further dissatisfaction with Byrd's performance and with her absences. After further complications from her pregnancy forced Byrd to miss parts of two days during January 1991, she was discharged at Bradley's request on January 22, 1991. The reason listed on the Lakeshore Hospital Personnel Action Report was "unsatisfactory performance and unwillingness to accept supervision."

Lakeshore Hospital has an employee sick leave policy. The policy, which does not refer explicitly to pregnancy, provides that "employees will accumulate sick leave" at the rate of 3.692 hours per pay period, to a maximum of 720 hours accumulated. The policy further states:

All employees may use sick time for personal illness, injury, doctor's appointments, or for illness, injury, or doctor's appointments of a member in the employee's immediate family (which includes spouse and eligible dependents).

It is undisputed that Byrd had accumulated sufficient sick leave to cover all of her absences, and that she in no way abused the sick leave policy. Similarly, Lakeshore does not dispute that Byrd provided her supervisors with sufficient notice upon taking her sick leave days. Bradley nonetheless conceded at trial that one of her reasons for seeking Byrd's termination was that Byrd had been absent during the periods when she had pregnancy-related medical difficulties.

After a bench trial, the district court found that Byrd generally was "a hard working, cooperative worker, with a pleasant disposition [who] acted very professionally in responding to demands made upon her." The court also determined that "one of the motivating reasons for Ms. Byrd's being terminated was the extent of her absences," which "related simply to the taking of vacation days and, in part, related to taking of holidays, scheduled holidays, and in part, relating to taking of time connected with her pregnancy."[1]

Although the district court recognized the existence of the Lakeshore sick leave policy, it nonetheless held that Byrd was not entitled to recovery under the PDA, absent further evidence that Lakeshore had "dealt with absences by employees in conjunction with [health] problems ... other than pregnancy differently from the way the plaintiff here was treated."[2] Byrd appeals from this judgment.

## II.

Congress added Section 701(k) to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, in 1978 to address, in the context of pregnancy, Title VII's prohibition of "discriminat[ion] ... because of ... sex...." 42 U.S.C. § 2000e–2(a)(1). This

---

**1.** The district court found that another reason for the termination was Bradley's "good faith belief" that Byrd was not performing her job satisfactorily.

**2.** The district court did not indicate whether Byrd had proved a prima facie case of pregnancy discrimination. As we explain *infra,* this omission is not dispositive.

section, titled the "Pregnancy Discrimination Act" (PDA), provides that:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work....

42 U.S.C. § 2000e(k).

Congress passed the PDA to reverse the holding in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) that an otherwise comprehensive disability insurance plan did not violate Title VII because it failed to cover pregnancy-related disabilities. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 678–79 and n. 17, 103 S.Ct. 2622, 2628–29 and n. 17, 77 L.Ed.2d 89 (1983). The Court had based its holding in *Gilbert* on the conclusion that discrimination on account of sex did not include discrimination on account of pregnancy. *Gilbert,* 429 U.S. at 136, 97 S.Ct. at 408. As is evident from the text of the PDA, Congress rejected this conclusion.

■ It is today a settled principle that the PDA and Title VII are violated when pregnant employees are denied privileges afforded non-pregnant temporarily disabled employees. *See International Union UAW v. Johnson Controls,* 499 U.S. 187, 197, 111 S.Ct. 1196, 1202, 113 L.Ed.2d 158 (1991) (fetal protection policy violated PDA where "[f]ertile men, but not fertile women, [were] given a choice as to whether they wish[ed] to risk their reproductive health"); *Newport News,* 462 U.S. at 684, 103 S.Ct. at 2631 (PDA "makes clear that it is discriminatory

to treat pregnancy-related conditions less favorably than other medical conditions"). Such a denial of privileges contravenes "the basic principle of the Act," which is "that women affected by pregnancy and related conditions must be treated the same as other applicants and employees on the basis of their ability or inability to work." H.R. No. 95–948, 95th Cong. 2d Sess. § 1(a) (1978).

■ It is equally settled that these principles extend to sick leave benefits, commanding equality of benefits as between pregnancy-related and non-pregnancy-related conditions. As the House Report accompanying the Act made clear:

> This bill would prevent employers from treating pregnancy, child-birth and related medical conditions in a manner different from their treatment of other disabilities. In other words, this bill would require that women disabled due to pregnancy, childbirth or other related medical conditions *be provided the same benefits as those provided other disabled workers. This would include temporary and long-term disability insurance, sick leave,* and other forms of employee benefit programs.

H.R. No. 95–948, § 1(a) (emphasis added).[3] The pertinent EEOC regulations similarly provide that "[a] woman unable to work for pregnancy-related reasons is entitled to ... sick leave on the same basis as employees unable to work for other medical reasons." 29 CFR Ch. XIV Pt. 1604, Introduction to App. (1993).[4]

Although the district court recognized that Lakeshore had terminated Byrd for availing herself of job benefits afforded employees by the sick leave policy, the court concluded that no violation of the PDA had been proven. The district court rested this decision on the conclusion that no PDA violation could be

---

3. The inverse is also true: the same House Report indicates that the PDA "will not require an employer who does not provide disability benefits or paid sick leave to other employees to provide them for pregnant workers." *Id.; see also* Joan E. Bertin, *Work and Family,* in *Women and The Law,* 2A–7 (Carol H. Lefcourt, ed., Release # 2, 1988) ("The PDA did not require employers to provide any specific benefits for pregnant workers or others; it merely required employers to give pregnant women *at least* the

benefits already provided other workers.") (emphasis in text).

4. Although the EEOC's views do not control this court, they nonetheless reflect "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Gilbert,* 429 U.S. at 141–42, 97 S.Ct. at 410–11 (internal quotation omitted).

found absent specific evidence that other non-pregnant workers similarly were denied these benefits. For the following reasons, we disagree, and hold that the district court's factual findings mandate a finding that the PDA was violated in this case, as a matter of law.

■ We note initially that the district court did not employ the familiar three-step inquiry set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). The court thus did not indicate whether Byrd had presented a prima facie case of differential application of benefits, or whether Lakeshore in turn had responded with a legitimate articulated neutral reason. *See Burdine*, 450 U.S. at 252–56, 101 S.Ct. at 1093–95; *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25. This omission is not dispositive, however, because the district court ultimately found that a substantial cause of Byrd's discharge was her use of the company's sick leave policy for her pregnancy-related conditions. If this finding is correct—and appellee does not allege that it is not—then it amounts to a finding of pregnancy discrimination. For just as an employee may "establish[ ] a presumption ... of facial discrimination by showing that the 'policy *by its terms* applies only to women or pregnant women[,]' " *Maddox v. Grandview Care Center, Inc.*, 780 F.2d 987, 990 (11th Cir.1986) (emphasis added) (quoting *Hayes v. Shelby Memorial Hospital*, 726 F.2d 1543, 1548 (11th Cir.1984)), she may establish a similar presumption—in this case unrebutted—by demonstrating that the policy *in practice* has been applied unequally to pregnancy-related conditions. *See, e.g., Garner v. Wal–Mart Stores, Inc.*, 807 F.2d 1536, 1538 (11th Cir. 1987) (where pregnant employee returning from maternity leave was treated contrary to employment manual, inference of pregnancy discrimination arose; *cf. Jackson v. Veterans Admin.*, 22 F.3d 277, 283 (11th Cir.1994) (Birch, J., dissenting) (noting in Rehabilitation Act case that "*sick leave is by its very nature unpredictable and irregular,*" and that "as long as [the employee is] within the limits of that leave," his absences must be accommodated) (emphasis in original).[5]

Lakeshore argues that in order to prove a PDA violation, Byrd additionally was required to show that other employees were treated better than she was, *i.e.* that they were neither denied the guaranteed sick leave benefits nor fired for availing themselves of them. We reject this argument because the only logical inference to be drawn in this case is that the Lakeshore policy customarily was followed. A contrary result would amount to a presumption, absent any further evidence from Byrd, that Lakeshore Hospital commonly discharges employees for taking their allotted sick leave time. If such is the case, then the burden was on Lakeshore to prove this unusual scenario.

### III.

The effect of our decision today is simple: it is a violation of the PDA for an employer to deny a pregnant employee the benefits

---

5. Because we hold that the district court's findings amounted to a finding that the PDA was violated, we need not determine at what point Byrd sufficiently fulfilled her prima facie burden. *See generally Burdine*, 450 U.S. at 252–56, 101 S.Ct. at 1093–95; *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25. Likewise, because Lakeshore has not presented any non-discriminatory reason for Byrd's exclusion from the sick leave policy, there is no need to inquire into the second level of the familiar *McDonnell–Burdine* analysis. *See generally id.*

By the same token, we need not determine whether this case might have been viewed below as one involving "direct evidence" of pregnancy discrimination, excluding this case from the *McDonnell–Burdine* burden-shifting analysis altogether. *See generally Wilson v. City of Aliceville*, 779 F.2d 631, 635 (11th Cir.1986); *Bell v. Birmingham Linen Serv.*, 715 F.2d 1552, 1557 (11th Cir.1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). Regardless of whether a "direct evidence" or *McDonnell–Burdine* framework is employed, the result is the same: Lakeshore unlawfully discriminated because it terminated Byrd for taking pregnancy-related sick leave yet afforded sick leave to non-pregnant temporarily disabled workers.

commonly afforded temporarily disabled workers in similar positions, or to discharge a pregnant employee for using those benefits.

For the reasons discussed above, the order of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.