**Margaret BURAU, Plaintiff,**

v.

**Marvin RUNYON, Postmaster General, Defendant.**

**No. 5:95 CV 2644.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 20, 1997.

Richard L. Henning, Sally D. Henning, Henning, Yost & Souers, Canton, OH, for Plaintiff.

William J. Kopp, Cleveland, OH, for Defendant.

### *ORDER*

SAM H. BELL, District Judge.

The above-captioned matter came before this court upon the filing of a complaint by Plaintiff Margaret Burau in which she alleges three causes of action against the Defendant Postmaster: discrimination and the failure to provide reasonable accommodations for Plaintiff's mental disabilities in violation of 42 U.S.C. § 12002[sic]; gender discrimina-

tion in violation of 42 U.S.C. §§ 2000e–2 and 2000e–16; and retaliation for the filing of an EEO charge in violation of 42 U.S.C. § 2000e–3(a). (Complaint, docket # 1.) Defendant timely filed a motion for summary judgment, (docket # 10), on September 20, 1996. After seeking and receiving an extension of time until November 29, 1996, in which to respond to the motion, Plaintiff filed her thirty page opposition on December 2, 1996.[1] On December 11, 1996, Defendant filed his reply, (docket # 21), which the court accepted despite Plaintiff's objection, (docket # 22). The Court now considers Defendant's motion.

### Standard of Review

The Court of Appeals for the Sixth Circuit has summarized the standard of review governing motions for summary judgment under Federal Rule of Civil Procedure 56 as follows:

> Summary judgment is appropriate where "there is no genuine issue of material fact ... and the moving party is entitled to judgment as a matter of law." ... [The] court must view all facts and inferences drawn therefrom in the light most favorable to the non-moving party.

> The moving party has the burden of conclusively showing that no genuine issue of material fact exists. Nevertheless, in the face of a summary judgment motion, the nonmoving party cannot rest on its pleadings but must come forward with some probative evidence to support its claim.

> "By its very terms, this standard provides that the existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." The dispute must be genuine and the facts must be such that if they were proven at trial, a reasonable jury-could return a verdict for the nonmoving party. If the disputed evidence "is merely colorable or is not significantly pro-

---

1. By local rule dispositive motions in standard track cases are not to exceed twenty pages. *See*

Local Rule 8:8.1(f).

bative, summary judgment may be granted."

*LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir.1993) (citations omitted). With this standard in mind, the court will address the Defendant's present motion.

## Background

The instant cause of action was brought because the Plaintiff, Margaret Burau, believes that she was the subject of discrimination while an employee of the United States Postal Service. According to Plaintiff, she is a "recovered chemically dependant person, qualified to perform her job." (Docket # 20, at 3.) Nonetheless, during the summer and fall of 1993, rumors abounded that Plaintiff had a drug problem. (EEOC Hearing Tr. 43, 43, 93, 117, 207; Burau Aff.) Once the Defendant's agents became aware of Plaintiff's former drug use, she was allegedly treated differently. (*See* Docket # 20, at 3.) Of particular concern to Plaintiff was insulting and demeaning treatment by her supervisor Kathy Vidovitch. (*Id.* (citing EEOC Hearing Tr. 63, 93, 43, 113–114.)) Such treatment includes locking Plaintiff's telephone so that she could not use it in October of 1992. Finally, on October 13, 1993, Supervisor Vidovitch is alleged to have said that "if [Plaintiff's] head was not so full of coke she would know where it was." (Tr. at 13.) On October 14, 1993, Plaintiff left the Post Office on sick leave; she never returned.

On or about November 29, Plaintiff attempted to contact the EEO department of the Post Office to discuss and resolve Plaintiff's concerns that she was being treated differently due to her former drug use. On December 3, 1993, Plaintiff requested advance sick leave so that she could continue receiving pay during her leave of absence. (Tr. 197–98.) Apparently, one male employee had been granted such advance leave by a previous postmaster, but Plaintiff's postmaster denied her request. On December 9, 1993, Plaintiff requested the necessary forms to proceed with her EEO complaint. One week later, the EEO counselor, Mr. Peoples, met with Plaintiff to discuss her complaint and advised her that her past drug dependency did not entitle her to protection under the Rehabilitation Act. (Tr. 107–08.) Despite Mr. Peoples' advice on that subject, Plaintiff completed and returned her EEO counseling form on January 7, 1994.

Later in January, Plaintiff's request for prime time annual leave was ignored because it was submitted late. Plaintiff alleges that she was given fewer days than other employees to complete the appropriate form, and that she should have been allowed more time to return the leave form. Ultimately, Defendant determined that Plaintiff should lose the enviable position that her seniority would otherwise have granted her in determining prime annual leave. (*See* Docket # 20, at 13–14.)

On March 7, 1994, Plaintiff filed her Complaint with the EEOC. (Docket # 20, ex. C.) The Post Office began its consideration of Plaintiff's complaints on March 15, 1994. At an April 12, 1994 meeting with Plaintiff and her attorney, EEO Counselor Peoples restated his belief that Plaintiff was not eligible for the protection offered by the Rehabilitation Act. (Docket # 20, Attachment E, Burau aft. A.) On June 15, 1994, Mr. Peoples concluded his investigation into Plaintiff's allegations; a final decision of Plaintiff's administrative action was issued by the United States Postal Service on September 20, 1995, finding in Defendant's favor. (Complaint ¶ 3.) This action followed.

## Analysis

In his motion before the court, the Defendant Postmaster General does not challenge the substance of a great portion of Plaintiff's claims, but rather argues that this court is without jurisdiction to hear Plaintiff's Title VII and Rehabilitation Act complaints because she failed to timely contact an EEO officer regarding most of her charges, and because the only timely actions about which she complains are not supported by sufficient evidence. Title VII provides the exclusive remedy for claims of discrimination brought by federal employees, *Brown v. General Servs. Admin.*, 425 U.S. 820, 828–29, 96 S.Ct. 1961, 1965–66, 48 L.Ed.2d 402 (1976), and those employees may not seek relief in federal courts until they have exhausted their administrative remedies. *Id.* at 832, 96 S.Ct. at 1967–68; *Haithcock v. Frank*, 958 F.2d

671, 675 (6th Cir.1992). The first step that Plaintiff must take toward exhaustion of her administrative remedies is contacting an EEO counselor within forty-five days of the event or events about which she complains. *See* 29 C.F.R. § 1614.105(a)(1).

Giving great weight to a liberal interpretation the Plaintiff's sworn affidavit, the court could find that Plaintiff attempted to contact an EEO counselor on November 29, 1993. (*See* Burau Aff. ¶ 13.) Thus, Plaintiff could state a claim for any event that occurred within forty-five days of November 29, 1993—on or after October 15, 1993. A review of the evidence before the court reveals only three events in that time period (indeed, Plaintiff was not in the workplace after October 14, 1993) and those include the denial of Plaintiffs request for advance sick leave on December 10, 1993, allowing Plaintiff only a limited time to request prime annual leave, and an episode in which Plaintiff's EEO officer, Mr. Peoples, allegedly told Ms. Burau that past drug dependency did not entitle her to protection under the Rehabilitation Act. Plaintiff contends that these incidents were but the latest events in an ongoing continuous series of discriminatory acts and therefore she should now be allowed to seek redress for all discriminatory conduct related to those continuing violations.

■ Without addressing the merit of Plaintiff's pre-October 15, 1993 complaints, Defendant argues that Plaintiff's claim must fail because she cannot, as a matter of law, establish that the post-October 15, 1993 deeds were discriminatory. If they were not discriminatory, they could not possibly be the latest events in an ongoing continuous series of discriminatory acts. "[W]ithout a specific, allegedly discriminatory act ... within the limitations period, mere existence of an alleged policy of violating equal protection rights will not toll the running of the statute of limitations." *Dixon v. Anderson,* 928 F.2d 212, 217 (6th Cir.1991). Therefore, this court should not reach Plaintiff's claims of discrimination involving events prior to October 15, if they have not been tied to any *discriminatory* events within the time period by which Plaintiff was required to contact the EEO counselor. It is for this court to determine if

Plaintiff has offered evidence of any post-October 15, 1993 discriminatory acts.

■ The first discriminatory act alleged by Plaintiff that falls within forty-five days of her first alleged contact with an EEO counselor is the denial of her request for advance sick leave. Plaintiff attempts to establish that this denial was discriminatory in at least two different ways. First Plaintiff believes that she has direct evidence of a hostile *environment,* because Defendant's agent called Plaintiff a "coke head," singled her out for abusive conduct, yelled at her, and told her she was not protected by the Rehabilitation Act. (Docket # 20, at 21.) While this may all be true, and it may support a hostile environment claim prior to Plaintiff's last day of attendance at work, October 14, 1993, the court does not surmise how it is direct evidence of a discriminatory decision not to grant advance sick leave on December 10, 1993. This evidence might be seen to portray Defendant's reason for denying advance leave as pretextual, but nothing directly links this behavior with the denial of Plaintiff's request for advance sick leave.

■ Plaintiff argues in the alternative that there is indirect evidence of a discriminatory motive for failing to grant advance sick leave. In the typical cause of action, a plaintiff will prove her claim of discrimination or retaliation by providing evidence which satisfies the various elements of the *McDonnell Douglas/Burdine* burden shifting analysis. In order to establish her prima facie case, Plaintiff can provide the court with evidence of disparate treatment, that is, she can show that "[t]he employer simply treats some people less favorably than others because of their race, color, religion ..." or other protected characteristics. *International Broth. of Teamsters v, United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582–83 (6th Cir.1992). This involves a showing that the plaintiff is a member of a protected class, and that "for the same or similar conduct, [s]he was treated differently than similarly-situated [unprotected] employees." *Mitchell,* 964 F.2d at 582–83. Only then does the burden normally shift to the defendant to offer a nondiscrimi-

natory reason for the disparate treatment. *Id.*

In the instant case, Plaintiff argues that she was denied advance sick leave because she is a female, a recovering drug addict, and mentally or emotionally handicapped. (*See* docket # 20, at 22, 1.) Assuming that Plaintiff is a member of one or more of these protected groups, she must next show that other similarly-situated nonprotected employees were granted sick leave. However, Plaintiff argues that this second prima facie requirement does not apply in her case because here a non-handicapped male employee was provided advance sick leave, and thus "the only logical inference is that Defendant would normally" provide the benefit. (*Id.* at 22.) Because the benefit is normally provided, and because it was denied to this handicapped woman, Plaintiff believes she has satisfied her prima facie case and that the burden is on the Defendant to prove a lack of retaliation and discrimination in the application of its policy. *Id.* at 23 (citing *[Byrd] v. Lakeshore Hospital,* 30 F.3d 1380 (11th Cir. 1994)).

The case relied upon by Plaintiff for this understanding of the law, *Byrd v. Lakeshore Hospital,* involved a woman who was discharged because she used the defendant company's sick leave policy for her pregnancy-related conditions. *Byrd,* 30 F.3d at 1383. The Eleventh Circuit assumed that the defendant company customarily allowed its employees to take all of their sick leave and that an employee could not be terminated for taking sick leave within the stated limits of that policy. *Id.* Based on this assumption, the Circuit found that where a plaintiff could show that she was terminated for taking advantage of the leave policy, the burden shifted to the defendant to show that employees were not customarily allowed to use that amount of their leave. *Id.* Because the defendant in *Byrd* did not provide evidence regarding what was typically allowed under the policy, judgment for the plaintiff was appropriate. *Id.*

In the instant case, Plaintiff argues that because the Defendant maintains a policy which can allow for the provision of advance sick leave, and because it has been provided at least once before, this court should assume that the Defendant customarily grants its employees advance sick leave. Based on this assumption, the court should find that the denial of advance sick leave to a recovering addict, or emotionally or mentally handicapped woman such as Plaintiff, shifts the burden of production to the Defendant to offer evidence that the policy of granting advance sick leave was not customarily followed. With no disrespect to the Plaintiff or the Eleventh Circuit, the court does not share this view of the law.

The primary point of contention that this court has with this analysis is its assumption that there is a policy in favor of granting advance sick leave. Just because something is available does not mean that it is readily available or that it has been denied based on a particular characteristic of the applicant. If this were the case, every employee who had a protected characteristic, and who applied for and was denied any benefit, promotion, or what-have-you, could bring a suit for discrimination, despite the lack of evidence that that characteristic had anything to do with the denial. This is not a discerning test. That is likely why the Supreme Court and Sixth Circuit have typically required a plaintiff in a discrimination case to point to someone else who is similarly-situated and who was treated somehow better than the plaintiff. However, if a plaintiff cannot clear this preliminary hurdle, it would be error to put the defendant to his proofs. In this case, Plaintiff asks the court to shift the burden before she herself has cleared that preliminary hurdle. The court must decline that request.

■ Nonetheless, the court notes that Plaintiff has referred to one nonprotected employee who was granted advance sick leave by a previous postmaster. But Plaintiff has not provided the court with any evidence concerning how that employee was similarly-situated and thus a useful subject for comparison. Rather, the undisputed facts demonstrate that the other nonprotected employee was granted advance sick leave by a different supervisor. This difference alone is sufficient to render him an incomparable employee for our purposes. *Mitchell,*

964 F.2d at 583 ("The individuals with whom plaintiff seeks to compare his/her treatment must have dealt with the same supervisor . . ."). Because Plaintiff has not provided this court with evidence that she was treated differently than similarly-situated nonprotected employees, the court finds that she has not provided prima facie evidence that she was denied advance sick leave due to discrimination. Plaintiff has not demonstrated that the denial of advance sick leave was a discriminatory act or that it was part of an ongoing series of discriminatory acts.

■ The second incident referred to by Plaintiff as evidence of a continuous ongoing series of discriminatory violations is the Defendant's failure to afford Plaintiff an equal opportunity to request prime annual leave on January 29, 1994. According to Plaintiff, the Postal Service had a policy of giving employees seven days to fill out their request for annual leave, and then the leave was awarded based on seniority. However, when it came time to distribute the appropriate form, Plaintiff was home on sick leave. The evidence before the court indicates that the Plaintiff's supervisor Vidovitch discussed with a Union Steward a method of notifying Plaintiff that it was time to request annual leave. (EEOC Hearing Tr. 119–120.) Supervisor Vidovitch sent the letter via certified mail. (*Id.* at 120.) The same procedure was followed for two male employees. (*Id.*) The Plaintiff has not identified any evidence indicating the mental health or any other characteristics of those two male employees.

Plaintiff now complains that she had only two days to submit her leave request, whereas the two male employees had more time. However, the evidence before the court does not bear this out. Rather, the evidence indicates that Supervisor Vidovitch sent letters to all three employees giving them seven days to respond and apply for leave. (*Id.* at 119–120.) While the evidence also indicates that Plaintiff received the notice with only two days to respond, it does not indicate whether this amount of time was different from the date of receipt of the two male employees or whether any difference was due to a delay in the mail, or due to Plaintiff's failure to pick up her mail, or because,

as she alleges, of the Defendant's discriminatory desire to short-change her. Similarly, Plaintiff complains that other employees were given an extension of time to bid for annual leave, but that she was denied an extension, however, she does not offer evidence of other employees who were, in fact, given such an extension. In the end, Plaintiff's prime annual leave form was filed late, and she lost her place toward the top of the seniority list to request that leave. This is unfortunate, but the court can only conclude that there is no evidence that this incident was discriminatory in nature or that it was part of an ongoing continuous discriminatory violation.

Finally, Plaintiff has identified one other set of post-October 15, 1993 incidents which she might view as part of a continuous violation, and which would therefore allow the court to consider claims based on pre-October 15, 1993 events. Having read Plaintiff's complaint, it is not surprising that in her brief she alleges that Defendant retaliated against her for filing her EEO complaint. However, Plaintiff's brief can also be read to argue that the alleged retaliation was part of a continuing violation of the underlying discrimination claims. Although the court doubts the fundamental efficacy of considering retaliation as part of a continuing violation of the underlying discrimination claims, the court will appraise Plaintiff's position— that EEO Counselor James Peoples discriminated against her when she attempted to seek accommodation from the Defendants.

■ First, according to the evidence cited by Plaintiff, Mr. Peoples chastised Plaintiff in a "demeaning and degrading" tone for filing a charge, and advised her that he did not think there was anything wrong with her. (Docket # 20, at 12 (citing EEOC Hearing Tr. at 107–08; Buran Aff.).) He then repeated these beliefs in an insulting manner on April 12, 1994, during a meeting regarding Plaintiff's pending EEO claim. (*Id.* at 14–15 (citing Burau Aff.), 27–28.) According to Plaintiff, this behavior represents discriminatory retaliation for filing her EEO charge.

As the Plaintiff acknowledges, to prove a claim of retaliation she must demonstrate that she engaged in protected activity, that

she suffered an adverse employment action, and that there was a causal link between the two. *Yates v. Avco,* 819 F.2d 630 (6th Cir. 1987); *Jackson v. RKO Bottlers of Toledo, Inc.,* 743 F.2d 370, 375 (6th Cir.1984). The facts as outlined above do not demonstrate retaliation for the filing of an EEO complaint but rather paint the picture of an EEO Counselor who disagreed with Plaintiff regarding the merit of her complaint. Again, Plaintiff must allege that she suffered an *adverse employment action* due to the filing of the charge. Examples of such an adverse action might include a reduction in responsibilities or pay, or discharge from employment. Disagreement at an EEO meeting, no matter how vocal, is not the stuff of a retaliation charge. In short, Plaintiff has not submitted evidence that Mr. Peoples retaliated against her within the meaning of the law and the claim based on those incidents must fail.

Because Plaintiff has not offered evidence to support her allegation that the defendant engaged in post-October 15, 1993 discrimination, there is no evidence of a continuing violation within the limitation period. The court cannot, therefore, reach Plaintiff's allegations of discriminatory behavior occurring before October 15, 1993, about which she did not complain in a timely manner. There being no evidence of discrimination before the court, it is believed that Defendant's motion for Summary judgment should be granted.

Nevertheless, Plaintiff correctly notes that in his motion for summary judgment, Defendant does not challenge the merit of her retaliation claim, as such. Above, the court only reached the merits of that claim as it relates to the type of ongoing violation which would allow the court to consider the other two claims in Plaintiff's complaint. Typically, if a defendant has not presented grounds for granting summary judgment on one of a plaintiff's many claims, the court will not reach that claim and the case will proceed to trial on the merits. Here, however, the court had to consider the merits of an unchallenged claim in order to determine the viability of two other challenged claims. Having done the analysis and found the third, unchallenged claim to be wanting, it would seem disingenuous for this court to allow that claim to proceed to trial.

Still, the court believes that Plaintiff should be afforded an opportunity to defend this claim specifically. *See Tingler v. Marshall,* 716 F.2d 1109, 1112 (1983). Thus, the court hereby notifies the parties that it intends to dismiss Plaintiff's third, retaliation claim because of a lack of evidence regarding any adverse employment action to which Plaintiff was subjected in retaliation for the filing of her EEO complaint. To avoid sua sponte dismissal of her remaining claim, Plaintiff has ten days in which to show cause why that claim should not be dismissed (ten page limit). Defendant has ten days to reply to Plaintiff's brief (ten page limit).

## Conclusion

Claims one and two of Plaintiff's complaint are based predominantly upon events occurring more than forty-five days before she contacted an EEO Counselor, and Plaintiff has failed to produce evidence of a discriminatory act within that time period which could prove a continuing violation. Therefore, the court holds that plaintiff has not offered evidence of discriminatory action to support counts one and two of her Complaint; Defendant's motion for summary judgment on those counts in granted. (Docket # 10.) Furthermore, the court intends to dismiss count three of Plaintiffs complaint sua sponte unless Plaintiff can show cause why that retaliation claim should not be dismissed for the reasons stated above. Plaintiff has ten days to file her ten-page brief, and Defendant has ten days to reply in kind.

IT IS SO ORDERED.