96 N.Y.2d 484 (2001)
754 N.E.2d 1099
730 N.Y.S.2d 15
SARA LEVIN et al., Appellants,
v.
YESHIVA UNIVERSITY et al., Respondents.
Court of Appeals of the State of New York.
Argued April 24, 2001.
Decided July 2, 2001.
*485 Vladeck, Waldman, Elias & Engelhard, P. C., New York City (James D. Esseks of counsel), American Civil Liberties Union Lesbian and Gay Rights Project (Michael Adams and Matthew A. Coles of counsel), and New York Civil Liberties Union (Arthur N. Eisenberg of counsel), for appellants.
Weil, Gotshal & Manges, L. L. P., New York City (Mark A. *486 Jacoby and Richard A. Simon of counsel), for respondents.
Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Roberta A. Kaplan and Brian V. Ellner of counsel), for Audre Lorde Project and others, amici curiae.
Law Office of Craig Gurian, New York City (Craig Gurian of *487 counsel), and Ronald J. Tabak for Association of the Bar of the City of New York, amicus curiae.
Lambda Legal Defense and Education Fund, Inc., New York City (Ruth E. Harlow and Stephen R. Scarborough of counsel), for Lambda Legal Defense and Education Fund, Inc., and others, amici curiae.
Eliot Spitzer, Attorney General, New York City (Adam L. Aronson, Preeta D. Bansal, Daniel Smirlock, Caitlin J. Halligan, Andrew G. Celli, Jr., and Carrie H. Cohen of counsel), for State of New York, amicus curiae.
*488 NAACP Legal Defense and Educational Fund, Inc., New York City (Robert H. Stroup, Elaine R. Jones, Theodore M. Shaw and Norman J. Chachkin of counsel), for NAACP Legal Defense and Educational Fund, Inc., and others, amici curiae.
Gay and Lesbian Law Students Alliance of the Benjamin N. Cardozo School of Law, New York City, and Public Interest Law Students Association of the Benjamin N. Cardozo School of Law, amici curiae.
*504 Judges LEVINE, WESLEY, ROSENBLATT and GRAFFEO concur with Judge CIPARICK; Judge SMITH concurs in result in a separate opinion; Chief Judge KAYE concurs in part and dissents in part in another opinion.

*489 OPINION OF THE COURT
CIPARICK, J.
The New York City Human Rights Law, like the State Human Rights Law, protects certain groups from policies or practices that discriminate against them in areas such as employment, public accommodations and housing (see, Executive Law § 296; Administrative Code of City of NY § 8-107). The City's Human Rights Law goes the additional step of prohibiting policies or practices which, though neutral on their face and neutral in intent, have an unjustified disparate impact upon one or more of the covered groups. In contrast to the State law, the New York City law explicitly extends protection to persons discriminated against on the basis of sexual orientation.
Plaintiffs Sara Levin and Maggie Jones are lesbians enrolled at defendant Yeshiva University's Albert Einstein College of Medicine (AECOM) in the Bronx.[1] Plaintiff Gila Wildfire appears as an officer of AECOM's lesbian and gay students' organization. The complaint alleges the following facts, which we must accept as true for present purposes: Yeshiva maintains a number of different sized apartments near AECOM for the housing of medical students. AECOM's housing policy restricts university-owned housing to medical students, their spouses and children. All apartment vacancies are filled from a waiting list on a first-come, first-served basis. Married couples, however, receive priority for studio apartments. One-bedroom apartments must be shared by a minimum of two students or a married couple. Two-bedroom apartments must be shared by a minimum of three individuals, with married couples having one or more children receiving priority.[2] To receive housing priority, married couples must provide Yeshiva's housing office with acceptable proof of marriage.
Prior to her first year of medical school, plaintiff Sara Levin requested housing for herself and her partner of five years. Pursuant to its policy, AECOM informed her that she had to produce proof of marriage in order to live with a non-student. Unable to produce proof of marriage, Levin accepted housing *490 in an on-campus three-bedroom apartment with two other students. Levin's request for housing with her partner was again denied the following year. Eventually, Levin and her partner moved into an off-campus apartment in Brooklyn. In her first year of medical school, plaintiff Maggie Jones was also denied housing with her partner. Jones accepted a one-bedroom apartment with another AECOM student during her first year, but then also relinquished campus housing to live with her partner off-campus.
Plaintiffs commenced this action in 1998 claiming that defendants' housing policy discriminated against them based on marital status in violation of the New York State and City Human Rights Laws and that it had a disparate impact against lesbians and gay men in violation of the City Human Rights Law (Administrative Code § 8-107 [5], [17]). In lieu of answering, defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (7). Supreme Court granted defendants' motion and dismissed the complaint in its entirety. The Appellate Division affirmed, agreeing that there was no discrimination or disparate impact on homosexuals, since defendant's policy "had the same impact on non-married, heterosexual medical students as it had on non-married homosexual medical students" (272 AD2d 158). Because plaintiffs have pleaded allegations sufficient to raise an issue of fact as to whether defendants' housing policy has a disparate impact on the basis of sexual orientation under the New York City law, we now modify the order of the Appellate Division and remit this case to the Supreme Court for further proceedings.

Marital Status
Contrary to plaintiffs' assertions, AECOM's policy did not discriminate on the basis of marital status on its face. This question is settled by our prior holdings in Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506) and Hudson View Props. v Weiss (59 NY2d 733).
As we held in Matter of Pizza Hut, and then again in Hudson View, for purposes of applying the statutory proscription, a distinction must be made between the complainant's marital status as such, and the existence of the complainant's disqualifying relationshipor absence thereofwith another person. Just as the lease provision in Hudson View did not turn on the marital status of the tenant, but instead validly limited occupancy to only those in a legal, family relationship with the tenant, AECOM's housing policy is restricted to those in legally *491 recognized, family relationships with a student, not the student's marital status (see, Hudson View Props. v Weiss, supra, 59 NY2d, at 735).
In our view, AECOM's housing policylimiting cohabitational housing eligibility to students, their spouses and dependent childrenis substantially indistinguishable from the policy considered in Hudson View limiting occupancy to tenants and their "immediate family." For this reason, the policy does not facially discriminate on the basis of marital status and the causes of action alleging such discrimination, as prohibited by both the State and City Human Rights Laws, were properly dismissed.

Sexual Orientation
Section 8-107 (5) (a) (1) of the Administrative Code of the City of New York makes it an unlawful discriminatory practice to refuse housing accommodations to any person because of that person's "actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, marital status, or alienage or citizenship status" (emphasis supplied). At the outset, we note that this provision applies to those who provide public or private housing accommodations, and so Yeshiva's status as a private institution does not exempt it from the enactment. While denying its violation, Yeshiva concedes that it is subject to the City Human Rights Law. Plaintiffs, as members of a protected class, allege a violation of the New York City Human Rights Law, section 8-107 (17), which creates a cause of action for "an unlawful discriminatory practice based upon disparate impact."
A claim of discrimination based on sexual orientation can be stated where a facially neutral policy or practice has a disparate impact on a protected group (Administrative Code § 8-107 [17] [a] [1]-[2]). Under that section, a claim is established where a plaintiff demonstrates that a defendant's policy or practice "results in a disparate impact to the detriment of any group protected" under the City Human Rights Law (id.).[3] Our inquiry at this stage concerns whether the complaint sufficiently pleads that AECOM's housing policy has such a *492 disparate impact on the basis of sexual orientation. How impact is measured is obviously a critical determination.
Instructive in this regard is Griggs v Duke Power Co. (401 US 424). In Griggs, plaintiffs, African-American employees of the defendant utility, alleged that their employer violated title VII of the Civil Rights Act of 1964 by instituting a policy that required all applicants for certain positions to have earned a high school diploma and/or pass a standardized test. Plaintiffs argued that the policy was discriminatory not because it targeted African-Americans but because, statistically, it disqualified African-Americans at a higher rate than white candidates. The lower courts held that defendant's policy was not suspect because it was keyed solely to educational achievement, and there had been no showing of discriminatory intent.
The United States Supreme Court reversed, holding that under the Civil Rights Act, "practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to freeze the status quo of prior discriminatory employment practices" (Griggs, supra, 401 US, at 430). Looking beyond facial neutrality the Court stated "[the Civil Rights] Act proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation" (id. at 431). The Court concluded that the facially neutral hiring and promotional requirements operated to exclude African-Americans at a significantly higher rate than similarly situated white applicants. In such a context, a prima facie case of disparate impact is established when it is demonstrated that a test or policy "select[s] applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants" (Albemarle Paper Co. v Moody, 422 US 405, 425; see also, Dothard v Rawlinson, 433 US 321, 329-330 [comparing ratio of men to women nationally to ratio of men to women who had qualified for positions as corrections officers]).
Twenty years after Griggs, in 1991, the City of New York enacted Human Rights Law § 8-107 (17), explicitly creating a disparate impact cause of action for plaintiffs who can demonstrate "that a policy or practice of a covered entity [e.g., employer, housing provider] or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any [protected] group" (Administrative Code *493 § 8-107 [17] [a]). Unlike the State Human Rights Law, the City law both specifies a right of action for policies or practices that have a disparate impact and specifically prohibits any form of discrimination based on sexual orientation. The New York City Council also explicitly made "disparate impact" applicable to discrimination claims outside of the employment context (Administrative Code § 8-107 [17]).
Here, the Appellate Division held that, as a matter of law, AECOM's housing policy did not have a disparate impact on plaintiffs on the basis of sexual orientation. It reached that conclusion by also ruling as a matter of law that married students had to be excluded from consideration for purposes of comparison between the benefitted and excluded classes. We conclude that the court erred in dismissing the complaint on that basis.
The exclusion of married students from the necessary comparison group conflicts with controlling disparate impact methodology and analysis. Self-evidently, married students make up a significant portion of the very class of persons made eligible by AECOM's policy for the substantial economic and social benefits of cohabiting with non-students in university-owned housing. In no presently authoritative precedent, either Federal or from our Court, has a plaintiff in a disparate impact discrimination case been precluded from pointing to the composition of the class of persons rendered eligible for benefits under the challenged policy at issue. Excluding a large portion of the class benefitted by this policy from the disparate impact comparison group would render the disparate impact analysis articulated in Griggs (401 US 424, supra) meaningless. To illustrate, the result in Griggs would have been entirely different had the plaintiffs been prevented from analyzing the racial composition of those actually offered employment under the company's hiring policy requiring successful test completion and/or a high school diploma. As a result, just as in the Appellate Division's ruling here, the only comparison would have been between those African-Americans and white persons without high school diplomas or passing test scores. And, since 100% of both classes were not the recipients of favorable treatment, no disparate impact would have been established, thereby frustrating congressional policy as applied to that case.
Here, the Appellate Division declared that only unmarried AECOM students were the proper comparison group, citing Hudson View Props. v Weiss (59 NY2d 733) as its basis. In so doing, the court apparently adopted one of defendants' two *494 principal justifications for excluding consideration of married students.
According to defendants, Hudson View established the legality of their housing policy, based upon the marital relationships of students and non-students, as against any discrimination challenge. On the basis of that assumption, defendants conclude that "married students are not similarly situated to other students because the distinction that the housing policy draws on the basis of marital relationship is a lawful one" (defendants' brief, at 32 [emphasis in the original]). The fallacy of this premise is easily demonstrated.
Hudson View holds only that a landlord's restriction limiting occupancy to a tenant's immediate family does not violate prohibitions against facial discrimination based upon marital status. It does not, however, determine the question of whether the same policy would constitute prohibited disparate treatment or disparate impact discrimination based upon sexual orientation or, indeed, discrimination against any other statutorily protected class. Thus, if AECOM had limited cohabitational university housing to married students of a particular race and their non-student spouses, such a policy would arguably be "lawful" with respect to marital status discrimination under Hudson View, since it would be based upon the relationships and characteristics of the particular partners, not upon their marital status as such. No one would seriously contend, however, that such a policy would not constitute illegal discrimination based upon race. Likewise here, the legality of AECOM's policy with respect to a marital status discrimination claim cannot insulate it from a sexual orientation discrimination claim.
Defendants' alternative argument is likewise unavailing. They assert that, because State law limits marriage to a union between a man and a woman, marriage-based requirements, by their very terms, facially discriminate on the basis of sexual orientation. "[I]t is analytically false to characterize a `marriage-based requirement' as being a `facially neutral policy' vis-à-vis sexual orientation" (defendants' brief, at 34). From that proposition, defendants draw the conclusion that married students must therefore be entirely excluded from the disparate impact analysis: "Because being married is not a facially neutral criterion as to [a]ppellants' claims of discrimination on the basis of sexual orientation, the courts below were correct in excluding married students from the composition of the similarly-situated groups to be compared" (id.).
*495 This reasoning is flawed in two critical respects. First, a university's housing policy could not be facially discriminatory on the basis of sexual orientation if the criterion used to determine whether housing was awarded operated to exclude both heterosexual and homosexual students while, at the same time, conferred housing to a distinct group, also comprised of both homosexual and heterosexual students.
That is exactly the case here. As defendants have conceded, not only students with spouses, but also students with dependent children, regardless of sexual orientation, are entitled to housing priorities under AECOM's policy. Conversely, not only gay and lesbian students and their partners are excluded from cohabitational housing, but also heterosexual students and their partners who, for whatever reason, are unable or unwilling to marry, as well as heterosexual and homosexual students who wish to live with relatives not qualifying as dependent children. Second, even if we were to accept defendants' proposition that AECOM's housing policy lacks facial neutrality "vis a vis sexual orientation," then AECOM would be compelled to acknowledge that its policy was facially discriminatory and, thus, in direct violation of the City's Human Rights Law on the basis of disparate treatment, without the necessity of establishing disparate impact.
Defendants' position here essentially distills to the proposition that AECOM's policy must be viewed as distinguishing between two nonsimilarly-situated groups: married students on the one hand who, by law, do not include homosexuals, and non-married students on the other. In short, AECOM's premise is that the comparison groups must be separated along the facially neutral lines drawn by its policy. The flaw in this analysis is demonstrated in the congressional repudiation of both the result and the reasoning of the Supreme Court's decision in General Elec. Co. v Gilbert (429 US 125) (see, Newport News Shipbuilding & Dry Dock Co. v Equal Empl. Opportunity Commn., 462 US 669).
At issue in General Elec. v Gilbert was a company employee disability plan that gave its workers benefits during periods of disability due to all nonoccupational causes except pregnancy. The majority in Gilbert held that the plaintiffs failed to establish a Civil Rights Act title VII violation for discrimination based upon gender, employing a rationale almost indistinguishable from that advanced here by defendants. That is, that the disability plan created two separate and dissimilar groups: (1) pregnant women (based on their physical condition, not *496 gender); and (2) nonpregnant men and women, who were treated equally for benefit eligibility (see, Gilbert, 429 US, at 134-135). The dissenters in Gilbert rejected that analysis as "simplistic and misleading" (id., at 152). The relevant comparison, according to the dissenters, had to be the overall disability coverage afforded men as against that afforded women (see, 429 US, at 155, 160 [Brennan, J., dissenting]; id., at 161 [Stevens, J., dissenting]). Under that analytical framework, the General Electric planwhich insured employees, male and female, against all risks of disability except pregnancy, the single risk that is unique to womenwas discriminatory based upon gender under the proper disparate impact analysis.
As fully explained in Newport News Shipbuilding & Drydock Co., in 1978, Congress overruled and repudiated the reasoning of Gilbert, and the legislative history expressly adopted the views of the dissenters in that case (see, Newport News, supra, 462 US, at 678-679). Just as in Gilbert, the attempt here is to extract married medical studentsthe very group benefitted by AECOM's housing policyfrom consideration in any disparate impact analysis thereby obscuring any realistic examination of the discriminatory effects of that policy.
In order to determine whether AECOM's housing policy has a disparate impact that falls along the impermissible lines of sexual orientation, there must be a comparison that includes consideration of the full composition of the class actually benefitted under the challenged policy. Because the Appellate Division's exclusion of at least a significant portion of that benefitted group constituted error as a matter of law, the cause of action alleging disparate impact discrimination based on sexual orientation as proscribed by the New York City Human Rights Law § 8-107 (17) was improperly dismissed on the pleadings and must be reinstated and remitted to Supreme Court for further proceedings. If, upon remittal, plaintiffs establish that AECOM's policy regarding university-owned housing with non-students disproportionately burdens lesbians and gay men, the City Administrative Code requires that defendants justify their policy as bearing a "significant relationship to a significant business objective" (Administrative Code § 8-107 [17] [a] [2]). The claims of plaintiff Wildfire, who lacked standing, were properly dismissed.
Accordingly, the order of the Appellate Division should be modified, without costs, by reinstating the seventh cause of action of plaintiffs Levin and Jones and, as so modified, affirmed.
*497 SMITH, J. (concurring).
I agree with the majority that there is no marital status discrimination. I also agree that the plaintiffs have stated a claim under the disparate impact section of New York City Administrative Code § 8-107 (17). Because I interpret that provision differently than the majority does, I concur but do not join the disparate impact section of the opinion.
Plaintiffs are medical students at defendant Einstein College of Medicine, a division of the defendant Yeshiva University, a private educational institution. Defendants offer housing at below market rates in apartment buildings near campus. This housing includes studio, one-bedroom and two-bedroom apartments and is made available to students, their spouses and children.
Plaintiffs Levin and Jones, medical students, alleged that their request to have their same-sex partners live with them was denied because they were not married. Plaintiffs each accepted the affordable housing offered to them as individuals, but later moved out of their university apartments in order to live with their partners.[1]
Plaintiffs commenced an action in Supreme Court, alleging that defendants' housing policy discriminates on the basis of marital status in violation of the New York City and State Human Rights Laws,[2] violates Real Property Law § 235-f, the Roommate Law, and has a disparate and detrimental impact on gay and lesbian students because it discriminates on the basis of sexual orientation in violation of New York City Human Rights Law. The seventh cause of action alleges specifically:
"38. By allowing married spouses of AECOM students to live in university housing but prohibiting non-married partners of AECOM students to live in university housing, defendants have engaged in a practice that has a disparate impact on lesbians and gay men and that therefore discriminates on the basis of sexual orientation in housing in violation of New York Administrative Code § 8-107 (5) and (17)."
*498 On defendants' motion, Supreme Court dismissed the complaint. Citing Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506, 512), in which the Court of Appeals concluded that discrimination based on marital status did not cover an individual's relationships but covered discrimination because a person was single, married, separated, divorced or widowed, the Supreme Court held that plaintiffs failed to state a cause of action for marital status discrimination under the New York City and State Human Rights Laws. The court also concluded that plaintiffs failed to state a cause of action for violation of the Roommate Law, because it was not intended to cover temporary college housing.
Noting that plaintiffs were offered and accepted university housing, the trial court further held that a cause of action under a disparate impact theory did not lie because plaintiffs' ability to obtain housing was not adversely affected insofar as they were given housing as individuals. The court reasoned that insofar as society generally affords benefits to married couples, it was entitled to act in accordance with such general principles. It reasoned further that plaintiffs' real complaint lay with the Legislature's refusal to sanction same-sex marriages and concluded that plaintiffs should seek policy reform with the Legislature.
The Appellate Division affirmed. It concluded that plaintiffs had not stated a marital status discrimination cause of action and cited Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (supra, 51 NY2d 506) and Hudson View Props. v Weiss (59 NY2d 733 [plaintiff whose lease limited occupancy to the tenant and her immediate family but who lived in the apartment with an unmarried man could be evicted]). It also concluded that plaintiffs had not stated a cause of action for discrimination based on a disparate impact theory because defendants' policy had the same impact on non-married heterosexual medical students as it had on non-married homosexual medical students. Finally, it concluded that plaintiffs had failed to state a cause of action for violation of the Roommate Law because the policy applied only to premises occupied by a tenant as his or her primary residence and not to tenants living temporarily in student housing.
On this appeal, plaintiffs argue that (1) they have stated a cause of action for violation of the New York City Human Rights Law, New York City Administrative Code § 8-107 (17) because defendants' housing policy discriminates on the basis *499 of sexual orientation by creating a disparate impact on gay and lesbian students; (2) that the appropriate comparison for disparate impact purposes is between married persons and homosexual persons in committed relationships; (3) that the Appellate Division erred in failing to adequately apply the disparate impact analysis of Griggs v Duke Power Co. (401 US 424); and (4) that the Appellate Division erred in concluding that the defendants' policy can have no disparate impact because it treats all "non-married" people identically.[3]
Defendants argue (1) that plaintiffs have not alleged a disparate impact claim; (2) that the relevant categories for determining a disparate impact are non-married heterosexual students and non-married homosexual students; and (3) that when the appropriate categories are analyzed, plaintiffs suffered no greater impact as a result of the housing practice than similarly situated heterosexual non-married students.
New York City Administrative Code § 8-107 (17) states, in part:
"An unlawful discriminatory practice based upon disparate impact is established when: (1) the commission or a person who may bring an action under chapter four or five of this title demonstrates that a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter."
Griggs v Duke Power Co. (401 US 424) does not support the contention of plaintiffs. In that case, where defendant Duke Power Company had a longstanding policy of excluding African-Americans, the Supreme Court held that a test or a high school diploma could not be used to prevent the hiring of African-Americans where neither was necessary for the jobs in question. The Court used disparate impact analysis to reveal the continuing policy of discrimination against African-Americans, discrimination forbidden by title VII of the Civil Rights Act of 1964. In its decision, the Supreme Court stated:
"The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the *500 past to favor an identifiable group of white employees over other employees. Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to `freeze' the status quo of prior discriminatory employment practices" (401 US, at 429-430).
In order to apply Griggs v Duke Power Co. to the facts here, this Court must conclude that the traditional practice of private universities of granting housing preferences to married couples is unlawful discrimination, as well as being unlawful in its discriminatory impact. I am unable to draw that conclusion, particularly when marriage is a fundamental constitutional right (see, Loving v Virginia, 388 US 1; Zablocki v Redhail, 434 US 374) and the State has sought to recognize and support marriage as a positive institution.
Despite the inapplicability of Griggs v Duke Power Co. to the facts here, there is another interpretation of section 8-107 (17) that supports plaintiffs' position. It is that the legislation is designed to secure for unmarried, committed couples the same benefits as those enjoyed by married persons. Thus, under the legislation, same-sex couples who are in committed relationships would be able to secure housing and other benefits on the same basis as married couples.[4] The language of section 8-107 supports this interpretation. Thus, the action should not be dismissed, and defendants should be given the opportunity to prove that the University's policy "bears a significant relationship to a significant business objective" or that there is no disparate impact (Administrative Code § 8-107 [17] [a] [2]).
Chief Judge KAYE (concurring in part and dissenting in part).
I concur in the majority's conclusion that plaintiffs have stated a claim that AECOM's housing policy has a disparate impact on gays and lesbians, in violation of the New York City Human Rights Law, and that the disparate impact claim should be remitted to Supreme Court for further proceedings. I further conclude that plaintiffs have stated a claim of marital status discrimination.
Both the State and City Human Rights Laws make it illegal to withhold a housing accommodation from any person because *501 of that person's marital status (see, Executive Law § 296 [2-a] [a], § 296 [5] [a] [1]; Administrative Code of City of NY § 8-107 [5] [a] [1]). As this case comes to us in the context of a motion to dismiss, we must, for the purposes of this appeal, take plaintiffs' allegations as true. Here, plaintiffs allege that they were denied access to partner housinga type of housing accommodation offered by AECOMsimply because they were not married. AECOM permits married students to live in student housing with their partners; only unmarried students are denied this benefit. When plaintiffs applied for housing for their partners, the sole question asked by AECOM was whether they were married. Since plaintiffs could not present marriage certificates, they were denied access to the housing benefits they sought. For present purposes, these allegations state a claim of discrimination based on marital status.
Our decisions in Hudson View Props. v Weiss (59 NY2d 733) and Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. (51 NY2d 506) are not to the contrary. In Hudson View, a landlord sought to evict a female tenant for violating a provision in the lease limiting occupancy to the tenant and her "immediate family." The tenant was sharing the apartment with a man who admittedly was not part of her immediate family (59 NY2d, at 735). This Court held that the lease provision was enforceable, rejecting the tenant's argument that it constituted marital status discrimination. The Court stated, "the issue arises not because the tenant is unmarried, but because the lease restricts occupancy of her apartment * * * to the tenant and the tenant's immediate family" (id.). Thus, the Court concluded, the "applicability of that restriction does not depend on her marital status" (id.).
The extent of our holding in Hudson View was that a landlord does not engage in marital status discrimination by denying housing to a person who is not part of the tenant's immediate family. Unlike the tenant in Hudson View, plaintiffs have never admitted that their life partners are not part of their immediate families. Indeed, the gravamen of plaintiffs' complaint is that they share the same level of commitment with their partners as married persons share with their spousesthat their life partners are members of their immediate families. But AECOM's policy does not permit students to live in student housing with all immediate family members; rather, it permits them to live only with spouses and children. Thus, AECOM's policy is not "substantially indistinguishable from the policy considered in Hudson View" (majority opn, at 491).
*502 Significantly, in Braschi v Stahl Assocs. Co. (74 NY2d 201, 211), a plurality of this Court concluded that a tenant's same-sex life partner qualified as "family" under the non-eviction protection provisions of the New York City rent control law, stating that the term "family" includes "two adult lifetime partners whose relationship is long term and characterized by an emotional and financial commitment and interdependence." Indeed, in Hudson View the Court noted that it was not called upon to address whether the tenant's boyfriend could become part of her family "by marriage or otherwise" (59 NY2d, at 735). Clearly then, this Court has recognized that the concept of "family" can include more than just married couples and their children.
At the very least, it is a question of fact whether plaintiffs' life partners qualify as members of their "immediate families." If they do, the State and City Human Rights Laws prohibit AECOM from denying them partner housing merely because they are unmarried. Since discovery and fact finding on this issue are necessary, the lower courts improvidently granted AECOM's motion to dismiss.
Similarly inapposite is Matter of Manhattan Pizza Hut v New York State Human Rights Appeal Bd. In that case, the Court upheld Pizza Hut's anti-nepotism rule forbidding an employee from working under the supervision of a spouse, parent, sibling or offspring. Plaintiff was fired for being married to her supervisor, and she brought suit alleging marital status discrimination under the State Human Rights Law. Recounting the many sound reasons supporting Pizza Hut's anti-nepotism rule, this Court upheld the termination, stating that the Human Rights Law does not prohibit discrimination based on an employee's "relationships" (51 NY2d, at 513-514). The Court concluded that plaintiff had not suffered marital status discrimination because she was fired not for being married but "for being married to her supervisor"a valid anti-nepotism concern (id., at 514).
Here, by contrast, plaintiffs were not denied partner housing because of their relationship to any particular person, and certainly not for violating an anti-nepotism or anti-corruption rule. Rather, they were denied partner housing merely because they were unmarried. Indeed, Pizza Hut itself states that the Human Rights Law bars decisions from being made on the basis of whether a person is "single, married, divorced, separated or the like" (id., at 512). That is exactly what happened here.
*503 As to plaintiffs' disparate impact claim, the City Human Rights Law makes it illegal to deny access to housing accommodations on the basis of sexual orientation (see, Administrative Code § 8-107 [5] [a] [1]). A prima facie case of discrimination is shown where a facially neutral policy has a disparate impact on a protected group (see, Administrative Code § 8-107 [17] [a] [1]-[2]). If plaintiffs demonstrate a disparate impact and proffer an alternative, less discriminatory policy, the burden then shifts to the defendant to show that a significant business objective is served by its policy (see, Administrative Code § 8-107 [17] [a] [2]).
Here, AECOM's policy of providing partner housing to married students is facially neutral with respect to sexual orientation. That policy, however, has a disparate impact on homosexual students, because they cannot marry and thus cannot live with their partners in student housing. By contrast, heterosexual students have the option of marrying their life partners.
The Appellate Division erred by holding that the appropriate comparison groups were unmarried heterosexual students versus unmarried homosexual students. This holding defined plaintiffs' claim out of existence, since the disparate impact is created by AECOM's restriction of partner housing to married students. As the United States Supreme Court held in Griggs v Duke Power (401 US 424), the comparison groups may not be defined in such a way. Further, it is immaterial that State law permits only heterosexual marriage. The City Human Rights Law specifically bans housing discrimination on the basis of sexual orientation. The State marriage law merely defines who can and cannot marry; it was not intended to permit landlords to violate New York City's laws against housing discrimination.
Therefore, since plaintiffs have stated a prima facie case of discrimination based on sexual orientation, the case must be remitted for application of the burden-shifting method mandated by the City Human Rights Law.
Finally, I agree that plaintiff Gila Wildfire's claims must be dismissed for lack of standing.
Accordingly, I would modify the order of the Appellate Division by affirming the dismissal of plaintiff Wildfire's claims, and by reinstating the marital status and sexual orientation claims asserted by plaintiffs Levin and Jones and remitting those claims to Supreme Court for further proceedings.
Order modified, etc.
NOTES
[1] All parties agree that Yeshiva's religious affiliations have no bearing on this appeal. Also, plaintiffs did not plead claims based on either the State or Federal Constitution.
[2] The complaint alleges, at paragraph (9), that university-owned housing is restricted to "Yeshiva students, their spouses and children." Presumably, a single parent, regardless of sexual orientation, would be eligible to reside in university-owned housing with his or her child. The complaint is silent on this subject. However, defendants appear to concede the point in their brief.
[3] Once that showing has been made, defendant has an opportunity to plead and prove as an affirmative defense that the policy or practice complained of "bears a significant relationship to a significant business objective." The defense is defeated, however, when plaintiff produces substantial evidence of an available alternative policy or practice with less disparate impact, and defendant fails to prove that the alternative policy or practice would not serve defendant's significant business objective as well as the complained-of policy or practice (Administrative Code § 8-107 [17] [a] [2]).
[1] The third named plaintiff, Wildfire, is secretary and treasurer of a lesbian and gay student organization whose members include Levin, Jones and other students negatively affected by the defendants' policy.
[2] Specifically, the first five causes of action allege discrimination on the basis of marital status in violation of Executive Law § 296 (5) (a) (1), Administrative Code § 8-107 (5) and Executive Law § 296 (2-a), § 296 (4) and § 296 (5) (a) (3) respectively. The sixth cause of action alleges a violation of the Roommate Law, Real Property Law § 235-f.
[3] Plaintiffs did not seek leave to appeal the dismissal of their cause of action under the Roommate Law.
[4] In Baker v State (170 Vt 194, 744 A2d 864) the Vermont Supreme Court held that plaintiffs, same-sex couples were entitled to obtain the same benefits and protections afforded by Vermont law to married opposite-sex couples (id., at 224, at 886), and further held that "the current statutory scheme [would] remain in effect for a reasonable period of time to enable the Legislature to consider and enact implementing legislation in an orderly and expeditious fashion" (id., at 226, at 887). On July 1, 2000, Vermont's civil unions law took effect (see, Vt Stat Annot, tit 15, § 1204).