The Honorable Jim Lendall State Representative 10625 Legion Hut Road Mabelvale, AR 72103-2207
Dear Representative Lendall:
I am writing in response to your request for an opinion on the following questions:
 1. Would the exclusion of contraceptives from an employer or higher education-sponsored benefits program that otherwise provides prescription drug coverage violate Arkansas or federal law or the Arkansas Constitution of 1874 or the United States Constitution?
 2. If the exclusion of contraceptives from an employer or higher education-sponsored benefits program that otherwise provides prescription drug coverage would violate Arkansas law or the Arkansas Constitution of 1874, but would not violate federal law or the United States Constitution, is it likely that federal courts would follow Arkansas law on this question?
RESPONSE
It is my opinion that the answer to your first question is "no" with regard to state statutory law, as well as state and federal constitutional law. A response to your second question is therefore unnecessary. According to my research, however, the answer to your first question is less clear under federal statutory law. In this regard, one federal court has held that the exclusion of contraceptives from an employer's otherwise comprehensive self-insured prescription drug plan violated Title VII of the Civil Rights Act of 1964 ("Title VII,"42 U.S.C. § 2000e et seq.), as amended by the Pregnancy Discrimination Act ("PDA," 42 U.S.C. § 2000e(k)). Ericson v. Bartell Drug Co.,141 F.Supp.2d 1266 (W.D. Wash. 2001). A similar class action suit is pending in the United States District Court for the Eastern District of Missouri. Cooley v. DaimlerChrysler Corp., 281 F. Supp. 2d 979
(E.D. Mo. 2003). Depending upon the particular employer (see n. 3,infra) and the benefits program, therefore, the exclusion of contraceptives might violate a federal statute. Because neither the U.S. Supreme Court nor the Eighth Circuit Court of Appeals has addressed the issue, however, there is no controlling case law in Arkansas. The uncertain state of the law in this area, as discussed below, also contributes to my inability to definitively opine on the matter.
With regard, first, to state statutory law, there is no Arkansas statute requiring prescription drug coverage for contraceptives. The answer to this question is therefore clearly "no" under state statutory law.[1]
Nor do I perceive a viable constitutional argument arising as a consequence of the exclusion of contraceptives from prescription drug coverage. Even if the question pertains to a public employer such that it involves the requisite "state action" necessary to trigger constitutional guarantees, my research indicates that a constitutional argument would likely fail if predicated solely on the fact that the benefits program is less than all-inclusive. Cf. Geduldig v. Aiello, 417 U.S. 484 (1974) (state disability insurance program held not to violate the Equal Protection Clause of the Fourteenth Amendment by its sole exclusion of disabilities due to normal pregnancies); Bond v. Polytechnic Inst. andState Univ., 381 F. Supp. 1023 (W.D.Va. 1974) (dismissing an equal protection challenge to a student health plan that denied coverage for pap tests and gynecological examinations). The Supreme Court of Arkansas has not articulated any difference in the protections afforded by the equal protection clauses of the Constitutions of the United States and of Arkansas. Consequently I expect that our court, if faced with a case involving a challenge to a prescription drug plan based upon the equal protection guarantee contained in the Constitution of Arkansas, would similarly reject an equal protection claim premised upon the health plan's exclusion of contraceptives.
As for federal statutory law, it must first be noted that legislation introduced in the 105th, 106th, and 107th sessions of Congress, (the Equity in Prescription Insurance and Contraceptive Coverage Act, "EPICC"), would mandate that all plans that offer coverage of prescription drugs also cover all FDA-approved forms of birth control. See EPICC of 2001, S. 104, 107th Cong. (2001); EPICC of 2001, H.R. 1111, 107th Cong. (2001). But the bill has not reached the floor of either the House or the Senate. For an explanation of EPICC and its history, seeNote and Commentaries: The Equity in Prescription Insurance andContraceptive Coverage Act: Will Congress Heed the Wake-Up Call ofErickson v. Bartell Drug Company? 9 Conn. Ins. L.J. 253 (2002/2003).
As noted above, however, the United States District Court for the Western District of Washington has held that an employer violated Title VII and the PDA by providing a generally comprehensive prescription drug plan that selectively excluded prescription contraceptives. Ericson v. BartellDrug Co., supra. Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ."42 U.S.C. § 2000e-2(a)(1) (2004).[2] "Health insurance and other fringe benefits are `compensation, terms, conditions, or privileges of employment.'" Newport News Shipbuilding Dry Dock Co. v. EEOC,462 U.S. 669, 682 (1983). The Pregnancy Discrimination Act (PDA) broadened the scope of impermissible sex-based discrimination. The act states in relevant part:
 The terms "because of sex' or `on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .
42 U.S.C. § 2000e(k).
The court in Ericson, supra, reviewed the history of Title VII and the PDA and concluded that "Bartell's exclusion of prescription contraception from its prescription plan is inconsistent with the requirements of federal law." 141 F. Supp. at 1271. The court stated:
 The PDA is not a begrudging recognition of a limited grant of rights to a strictly defined group of women who happen to be pregnant. Read in the context of Title VII as a whole, it is a broad acknowledgment of the intent of Congress to outlaw any and all discrimination against any and all women in the terms and conditions of their employment, including the benefits an employer provides to its employees. Male and female employees have different, sex-based disability and healthcare needs, and the law is no longer blind to the fact that only women can get pregnant, bear children, or use prescription contraception. The special or increased healthcare needs associated with a woman's unique sex-based characteristics must be met to the same extent, and on the same terms, as other healthcare needs. Even if one were to assume that Bartel's prescription plan was not the result of intentional discrimination, the exclusion of women-only benefits from a generally comprehensive prescription plan is sex discrimination under Title VII. [Footnote omitted.] Title VII does not require employers to offer any particular type or category of benefit. However, when an employer decides to offer a prescription plan covering everything except a few specifically excluded drugs and devices, it has a legal obligation to make sure that the resulting plan does not discriminate based on sex-based characteristics and that it provides equally comprehensive coverage for both sexes. [Citation omitted.] In light of the fact that prescription contraceptives are used only be women, Bartell's choice to exclude that particular benefit from its generally applicable benefit plan is discriminatory.
Id. at 1271-72.
The court recognized that its decision is a "matter of first impression for the judiciary" (id. at 1275); but it also pointed out that the Equal Employment Opportunity Commission (EEOC) "made a finding of reasonable cause on the same issue which is entitled to some deference." Id. at 1275-76.[3]
Ericson was not appealed. The case only serves as binding precedent in the Western District of Washington. It has been the subject of numerous legal commentaries, some reflecting conflicting views of whether the decision is on solid footing. Compare, e.g., Backmeyer, Lack of InsuranceCoverage for Prescription Contraception by an Otherwise ComprehensivePlan as a Violation of Title VII as Amended by the PregnancyDiscrimination Act — Stretching the Statute Too Far, 37 Ind. L. Rev. 437 (2004) and Korland, Note: Sex Discrimination or a Hard Pill for Employersto Swallow: Examining the Denial of Contraceptive Benefits in the Wake ofErickson v. Bartell Drug Co., 53 Case W. Res. 531 (2002). For other discussions of Erickson, see Vargas, Note and Comment: The EPICC Questfor Prescription Contraceptive Insurance Coverage, 28 Am. J.L. and Med. 455 (2002) and Saubermann, Current Events, Erickson v. Bartell Drug Co.,141 F. Supp. 2d 1266 (W.D. Wash. 2001), 10 Am. U.J. Gender Soc. Pol'y 
L. 233 (2001).
Cases similar to Ericson are pending in other courts. See Cooley v.DaimlerChrysler Corp., supra (denying defendant-employer's motion to dismiss plaintiff-employees' class action based on employer's exclusion of coverage for prescription contraceptives under its health care plan, finding that the complaint established a prima facie case of disparate treatment and disparate impact under Title VII, as amended by the PDA);Mauldin v. Wal-Mart Stores, Inc., 2002 WL 2022334 (N.D. Ga. Aug. 23, 2002) (granting class action status for a suit alleging that Wal-Mart's policy of denying its employees health insurance coverage for prescription contraceptives violates Title VII, as amended by the PDA); EqualEmployment Opportunity Commission v. United Parcel Service, Inc.,141 F. Supp. 2d 1216 (D. Minn. 2001) (denying employer's motion to dismiss an action asserting sex discrimination under Title VII).
Cooley, supra, could provide binding precedent in Arkansas. On October 16, 2003, the Eighth Circuit Court of Appeals denied defendant's petition for interlocutory appeal. Cooley v. DaimlerChrysler Corp, 8th Cir. Docket # 03-8013 (Oct. 16, 2003).[4] The motion for class certification is pending in the Missouri district court. See 281 F. Supp.2d at 986. This clearly is the case to watch in determining whether Arkansas employers that offer prescription benefits to their employees but limit or deny contraceptive coverage are liable for discrimination under Title VII and/or the PDA. If the class is certified and the plaintiffs prevail, an appeal to the Eighth Circuit would present a case of first impression. The Eighth Circuit's previous decision in Krauel v. IowaMethodist Med. Ctr., 95 F.3d 674 (8TH Cir. 1996), undoubtedly will bear on the issue in that event. In Krauel, the court rejected the plaintiff's claim that infertility was included within the PDA, holding that infertility is not a medical condition related to pregnancy or childbirth. Id. at 679-80. The Cooley court relied upon certain language in Krauel when it denied defendant' motion to dismiss (finding that plaintiffs sufficiently alleged a claim under Title VII, as amended by the PDA). See also Note: Sex Discrimination or a Hard Pill for Employers toSwallow: Examining the Denial of Contraceptive Benefits in the Wake ofErickson v. Bartell Drug Co., supra (finding support in Krauel for the proposition that the Eighth Circuit draws a distinction between `"potential pregnancy,' which only affects women, and infertility, which affects both men and women." 53 Case W. Res. at 560 (emphasis added)).[5]
Another district court, however, has relied upon Krauel in expressing its doubts about a PDA claim in this context, citing Krauel for the proposition that "[t]he Eighth Circuit has made clear that prevention of conception is outside the scope of the PDA." Equal Employment OpportunityCommission v. United Parcel Service, Inc., supra,141 F. Supp. 2d at 1218. See also Lack of Insurance Coverage forPrescription Contraception by an Otherwise Comprehensive Plan as aViolation of Title VII as Amended by the Pregnancy Discrimination Act— Stretching the Statute Too Far, supra, 37 Ind. L. Rev. at 447 (concluding, based on Krauel, that Erickson, supra, was wrongly decided because "[l]ike infertility, contraception is readily distinguishable from `pregnancy,' `childbirth,' and `related medical conditions.' . . . Contraception, when used successfully, precludes pregnancy, just as infertility prevents pregnancy.") Accord Ryan, Casenote: Contraceptivesand Employer Health Prescription Plans: An Examination of Ericksonv. Bartell Drug Co., 11 Geo. Mason L. Rev. 215 (Fall, 2002).
The impact of Krauel on this question involving contraceptive coverage is thus arguably unclear. As one commentator has stated, "[w]hile theErickson court was receptive of such a claim, one cannot predict how other courts, including the Supreme Court, would handle such a case."Note and Commentaries: The Equity in Prescription Insurance andContraceptive Coverge Act: Will Congress Heed the Wake-Up Call ofErickson V. Bartell Drug Company?, supra at n. 4, 9 Conn. Ins. L.J. at 278. While it is possible that Arkansas employers will face liability under Title VII and the PDA when they provide health insurance that covers prescription drugs and devices but excludes prescription contraceptives, this question ultimately requires judicial resolution.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] It should be noted in this regard that the existence of a state statute is irrelevant if the particular benefits program in question is a non-governmental self-funded plan, because in accordance with the federal Employee Retirement Income Security Act ("ERISA"), such a plan is not subject to state law that regulates insurance. See 29 U.S.C. § 1003(a) and (b)(1) (2004).
[2] An "employer" for purposes of Title VII is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. . . ." 42 U.S.C. § 2000e(b). The term "person" is defined to include "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under title 11, United States Code, or receivers." Id.
at § 2000e(a). It has been held, based on this definition, that governmental activity is considered an industry affecting commerce. SeeUnited States v. Milwaukee, 393 F. Supp. 725 (E.D. Wis. 1975). Additionally, an institution of higher education is a "person" within the definition of "employer" under these provisions. See generally Hanshawv. Delaware Technical Community College, 405 F.Supp. 292 (D.C. Del. 1975). As a final note regarding the scope of Title VII, it should be recognized that Title VII's ban on discrimination "shall not apply . . . to a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1(a).
[3] The EEOC decision, dated December 14, 2000, is available at http://www.eeoc.gov/docs/decision-contraception.html. In its Decision, the EEOC stated that "contraception is a means by which a woman controls her ability to become pregnant [and the Pregnancy Discrimination Act's] prohibition on discrimination against women based on their ability to become pregnant thus necessarily includes a prohibition on discrimination related to a woman's use of contraceptives." Id.
[4] Having denied defendant's motion to dismiss on March 28, 2003, the district court nevertheless certified the issue to the 8th Circuit under 28 U.S.C. § 1291(b) for interlocutory appeal, stating that "[t]he Court is persuaded . . . that the Title VII and Pregnancy Discrimination Act issues in its March 28, 2003 order involve controlling questions of law as to which there are substantial grounds for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." The district court did not, however, stay the proceedings. As noted, the 8th Circuit denied the interlocutory appeal.
[5] This legal commentator has concluded that "it is apparent that contraception available only to women is subject to the PDA, despite the conflicting suggestion of the UPS court [Equal Employment OpportunityCommission v. United Parcel Service, Inc., 141 F. Supp. 2d 1216 (D. Minn. 2001), supra and noted infra]. Additionally, the bulk of prior case law and the statutory history surrounding the PDA suggest that contraception is a `related medical condition,' thus insulating the Erickson decision from future rejection." 53 Case W. Res. at 560.